# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 10-35-P-S |
| | ) | |
| DENNIS GAUTHIER, | ) | |
| | ) | |
| Defendant | ) | |

## RECOMMENDED DECISION ON MOTION TO SUPPRESS

The defendant, charged in a two-count indictment with conspiracy to distribute (Count I) and possession with intent to distribute (Count II) 500 grams or more of a mixture or substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, Indictment (Docket No. 3), moves to suppress statements he made to sheriff's deputies on January 20, 2010.[1] A hearing was held before me on August 27, 2010, at which the defendant was present. One witness testified for the government, one government exhibit was admitted without objection, and the parties stipulated to several facts. I now recommend that the court make the following findings of fact and deny the motion.

### I. Proposed Findings of Fact

On January 20, 2010, the defendant reported to the Lincoln County Sheriff's Office pursuant to pre-trial bail conditions that had been imposed on him by the Maine Superior Court (Sagadahoc County) on January 4, 2010, in connection with a charge of aggravated trafficking in

---

[1] The defendant's motion also seeks to suppress evidence seized during the execution of a search warrant at his residence at 37 Bog Road, Wiscasset, Maine, on December 31, 2009. Defendant's Motion to Suppress ("Motion") (Docket No. 80) at 1-2. However, the government has stated that it does not intend to use any such evidence at trial on this charge, Government's Objection to Defendant's Motion to Suppress ("Opposition") (Docket No. 94), and the defendant accordingly agrees that this portion of his motion is moot. Defendant Gauthier's Reply Memorandum to Government's Opposition to Motion to Suppress ("Reply") (Docket No. 99) at 1.

1

a Schedule W drug, a Class A felony. Conditions of Release (Govt. Exh. 1). Specifically, the document setting forth the bail conditions provided that the defendant could not use or possess alcoholic beverages or illegal drugs and that, "[i]n order to determine if s/he has violated any prohibitions of this bond regarding alcoholic beverages, illegal drugs or dangerous weapons, s/he will submit to searches of her/his person, vehicle and residence and, if applicable, to chemical tests . . . at any time without articulable suspicion or probable cause." *Id.* The defendant was required to report daily to the Lincoln County Sheriff's Office. *Id.*

On January 20, 2010, Detective Rollins of the Lincoln County Sheriff's Office took the defendant's urine sample and conducted a preliminary field test, which generated a positive result. Rollins told the defendant that the result was positive and that he would therefore be under arrest for violation of his bail conditions. The defendant raised his voice in response, telling Rollins that the result was wrong. As a result of hearing the raised voice, Detective Terry Michaud walked down the hall from his nearby office to the interview room where Rollins and the defendant were meeting, to see whether Rollins needed assistance. Michaud saw Rollins handcuff the defendant and followed them both out to Rollins' unmarked car.

The defendant sat in the front passenger seat of the car, which had no cage or barrier between the front and back seats. Rollins drove and Michaud sat behind the defendant, as was customary when transporting defendants to the nearby Two Bridges jail. The distance between the Lincoln County Sheriff's Office and Two Bridges jail is 3 or 4 miles, and the trip takes 5 to 10 minutes. At no time did Rollins or Michaud give the defendant the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

The defendant was upset and angry. While they were driving to the jail, he said that the underlying charge against him would be dismissed. Rollins asked the defendant, "Why is that?"

2

or words to that effect. The defendant responded that "there should have been five, but there were only four" on the inventory sheet recording the results of a search of the defendant's vehicle, and that a law enforcement officer had stolen the fifth one. Michaud laughed. Rollins then asked, "Do you mean ounces?" or words to that effect, and the defendant responded affirmatively. Michaud understood that, given the underlying charge, the defendant was talking about cocaine. There was no further conversation until the occupants of the car reached the jail and were inside the jail booking area, where the defendant refused to sign a summons. After their paper work was complete, Michaud and Rollins left the jail and returned to the sheriff's office.

The defendant was the first person to mention the inventory. The officers did not initiate any discussion of the defendant's underlying charges, and they did not intend to interrogate him.

The laboratory test of the defendant's urine sample later came back negative, indicating that the field test on January 20, 2010, generated a false positive result.

## II. Discussion

### A. The Bail Conditions

The defendant first contends that the bail condition imposed on him by the Maine Superior Court, which led to his presence at the Lincoln County Sheriff's Office on January 20, 2010, and the field test of his urine, was invalid, rendering his detention and thus any statement he may have made during his detention similarly invalid. Motion at 8-9. He offers two arguments: First, that the language of the bail condition did not include urine testing, and, second, that, so construed, the bail condition violated the Fourth Amendment to the United States Constitution.

The defendant asserts that, in order to make the testing of his urine valid, the bail condition was required to specify that testing of his bodily fluids was authorized. In addition, he argues that the use of the phrase "if applicable" in the bail condition with respect to chemical tests renders it unreasonable on its face, and thus legally invalid, because "[t]here are no criteria or orders . . . as to when a chemical test would be applicable." Reply at 2. He cites no authority in support of either contention, but contended at oral argument on August 27, 2010, that the language of bail conditions must be as specific as that required in search warrants.

The Maine Law Court, in *State v. Ullring*, 741 A.2d 1065 (Me. 1999), reviewed a condition of the defendant's bail that "required him to submit to random searches of his person, residence, and vehicle." *Id.* at 1066. He was arrested following a random search of his residence that found four one-eighth-ounce bags of marijuana. *Id.* The Law Court found that the random search bail condition was permitted by the Maine Bail Code, 15 M.R.S.A. §§ 1001-1104. *Id.* at 1068-71. It also found that the condition did not violate the Maine Constitution or the Fourth Amendment to the United States Constitution. *Id.* at 1071-73. It held that "[a] defendant who seeks to challenge such a condition as being unreasonable has the burden of presenting evidence to demonstrate that the condition in that individual case is not reasonable." *Id.* at 1073. In the absence of such evidence, the Law Court said, the reasonableness, and hence the constitutionality, of the bail condition is assumed. *Id.* Here, the defendant has made no such showing.

Nor does the language of the bail condition on its face support the interpretation urged by the defendant. Again, the condition says in relevant respect:

> The defendant shall not use any alcoholic beverages or illegal drugs . . . .
> In order to determine if s/he has violated any prohibitions of this bond
> regarding alcoholic beverages, illegal drugs or dangerous weapons, s/he
> will submit to searches of her/his person, vehicle and residence and, if

4

applicable, to chemical tests at any time without articulable suspicion or probable cause.

Conditions of Release. The defendant was released on bail having been charged with aggravated trafficking in Schedule W drugs, *id.*, the highest-level felony under Maine law other than murder.

The condition's reference to chemical tests can only reasonably be read to include chemical testing of blood and urine. It is difficult to conceive of any other "chemical tests" of a defendant's person that would be likely to be conducted in the case of a charge of aggravated trafficking in an illegal drug. The term is neither vague nor ambiguous as it is used in the bail condition. *See, e.g., Holder v. Humanitarian Law Project*, 130 S.Ct. 2705, 2718-19 (2010) (language of statute not unconstitutionally vague when it "provide[s] a person of ordinary intelligence fair notice of what is prohibited"). Nor does the use of the phrase "if applicable" on the form that records bail conditions imposed in the Maine courts render the condition unreasonable, unduly vague, or ambiguous. Indeed, chemical tests are particularly applicable when the pending charge involves illegal drugs, and thus the phrase does not encourage arbitrary or discriminatory enforcement. *See Kolender v. Lawson,* 461 U.S. 352, 357 (1983).

It, therefore, becomes necessary to address the defendant's constitutional argument based on the Ninth Circuit's opinion in *United States v. Scott*, 450 F.3d 863 (9th Cir. 2006).[2] In that case, the majority held that, in a case where the defendant had been arrested on state charges of drug possession and released on the condition, among others, that he consent to random drug testing at any time by a peace officer without a warrant, and the police administered a random urine test that field-tested positive for methamphetamine, the test violated the Fourth Amendment. *Id*. at 865, 874.

---

[2] Under Maine law, the defendant's arguments would not be reached, because he has not shown that he objected to the bail condition at issue, or, indeed, any of the bail conditions imposed on him, at the time they were imposed or at any time before he apparently violated that condition. *State v. Felch*, 2007 ME 88, ¶ 9, 928 A.2d 1252, 1254.

Assuming *arguendo* that the *Scott* rationale would be adopted by the First Circuit,[3] this case is similar in that the government has not attempted to show that the Maine Superior Court that imposed the bail condition, or any Maine court, found on an empirical basis that defendants charged with drug crimes are less likely to appear in court when required if they use illegal drugs while on bail. *Id*. at 870. Indeed, the government here did not rely on the defendant's consent to the bail conditions. The Ninth Circuit held that a demonstration of special need for the condition would have sufficed: that is, if the government had shown that a pattern of drug use generally led to nonappearance in court or that drug use in the case of that particular defendant was likely to lead to his nonappearance. *Id*. at 872. No such showing was made here.

However, the Ninth Circuit noted that it was "especially reluctant to indulge the claimed special need [for a drug-testing condition] here because Scott's privacy interest in his home, where the officers came to demand the urine sample, is at its zenith." *Id*. at 871. No such privacy interest is implicated in this case, because the defendant was required to provide a urine sample at the sheriff's office, not at home.

The Ninth Circuit also observed that a drug-testing condition of pre-trial release could be justified by a legislative finding that there is a connection between drug use and nonappearance at trial or that a particular defendant's ability to appear in court would be impaired absent such testing. *Id*. at 872 n.12. The Maine Bail Code, at 15 M.R.S.A. § 1026(4)(C), sets forth numerous factors that the judicial officer is required to review in setting bail, including the crime charged, the defendant's criminal history and past drug or alcohol abuse, whether the defendant has previously violated conditions of release, and his or her record of past appearances at court proceedings. And, at 15 M.R.S.A. § 1026(3)(A), the Bail Code allows a judicial officer to

---

[3] The holding and rationale set forth in *Scott* have not in fact been adopted by any other circuit court in the four years since the amended decision in that case was issued by the Ninth Circuit.

include refraining from the use of alcohol or drugs as a condition of release. This condition, like the others specifically listed, may be imposed only if "the judicial officer determines that the release [of the individual defendant otherwise] will not reasonably ensure the appearance of the defendant at the time and place required [or] will not reasonably ensure the integrity of the judicial process." 15 M.R.S.A. § 1026(3)(A). It is the stated purpose of the Bail Code, in addition, to ensure that "a defendant, while at liberty on bail, refrain from committing new crimes." 15 M.R.S.A.§ 1002.

While none of these terms appears to be sufficient to meet the *Scott* majority's requirement that the government demonstrate a pattern of nonappearance by released defendants who use illegal drugs or an individualized finding that such was the case with a defendant, the Maine Bail Code certainly expects such individualized determinations to be made in every case before the chemical testing condition is imposed. Without more, that should be sufficient for this court. *See Scott*, 450 F.3d at 895 (Bybee, J., dissenting); *see also Oliver v. United States*, 682 A.2d 186, 189 (D.C. App. 1996).

### B. *Miranda* Warning

In *Miranda*, the Supreme Court held that, once a suspect in custody[4] invokes his right to remain silent, law enforcement officers must cease interrogating him. *Grant v. Warden, Maine State Prison*, __ F.3d __, 2010 WL 3220654, at *4 (1st Cir. Aug. 17, 2010). Law enforcement officers may, however, ask a defendant in custody follow-up questions in order to clarify a statement volunteered by the defendant. *E.g., United States v. Rommy*, 506 F.3d 108, 133-34 (2d Cir. 2007); *United States v. Gonzales*, 121 F.3d 928, 939-40 (5th Cir. 1997); *Tolliver v. Sheets*,

---

[4] There is no dispute that the defendant was in custody at the time that he made the statements at issue. The suggestion of defense counsel at the hearing that the two sheriff's deputies in the car with the defendant were somehow bound by the defendant's invocation of his right to remain silent at some earlier point and the fact that he was represented by counsel, without any evidence of such knowledge by them, has no relevance to the *Miranda* analysis in this case.

7

530 F.Supp.2d 957, 985, 989 (S.D. Ohio 2008). That is all that happened here. There was no evidence that either deputy did or said anything that was intended to elicit incriminating information from the defendant.

At the hearing, counsel for the defendant argued that law enforcement officers should be required as a matter of federal constitutional law to give *Miranda* warnings to every arrestee, immediately upon his or her arrest, because the officers otherwise will refrain from giving the warnings in the hope that defendants will volunteer incriminating information. This speculation simply will not support such a broad amplification of the *Miranda* doctrine, nor is it supported by any language in that or subsequent decisions of the Supreme Court. In this case, Detective Michaud expressly disavowed any such intent, testifying that he does not give the warnings when he does not need any further information from a defendant in order to establish that a crime has been committed, or, as in this case, that a condition of bail has been violated. There is no evidence or legal authority to support counsel's contrary speculation on this point.

### III. Conclusion

For the foregoing reasons, I recommend that the proposed findings of fact be adopted and the motion to suppress **DENIED**.

#### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 30th day of August, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge